UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE DOE | * | CIVIL DOCKET |
| | * | NUMBER: 25-2077 |
| VERSUS | * | |
| | * | JUDGE LONG |
| JOHN ROE | * | MAGISTRATE VAN MEERVELD |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

### ANSWER AND COUNTERCLAIM OF DEFENDANT/COUNTER-CLAIMANT JOHN ROE TO PLAINTIFF'S COMPLAINT

NOW COMES Defendant/ Counter-Claimant John Roe ("Roe" or "Defendant/Counter-Claimant"), through undersigned counsel, and files this Answer, Affirmative Defenses, and Counter-Claim to the Complaint in this matter.

**I.    ANSWER AND AFFIRMATIVE DEFENSES**

Defendant/Counter-Claimant John Roe, through undersigned counsel, hereby provides this Answer and Affirmative Defenses to the Complaint filed by Plaintiff, Jane Doe. Defendant/Counter-Claimant Roe denies generally and specifically each and every material allegation of the Complaint, unless hereinafter admitted. For further answer and response, Defendant/Counter-Claimant alleges and states as follows:

1. Defendant/Counter-Claimant admits the allegations contained in Paragraph 1 of the Complaint.

2. Defendant/Counter-Claimant admits the allegations contained in Paragraph 2 of the Complaint.

3. Paragraph 3 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required to the allegations in Paragraph 3, Defendant/Counter-Claimant states that he does not contest the jurisdiction of the court.

4. Paragraph 4 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required to the allegations in Paragraph 4, Defendant/Counter-Claimant admits that he is a resident of Florida and does not contest the jurisdiction of the court.

5. Defendant/Counter-Claimant does not contest that venue is proper in this district.

6. The statements in Paragraph 6 are not allegations directed toward Defendant/Counter-Claimant and therefore do not require a response. To the extent a response is required, Defendant/Counter-Claimant does not contest the Plaintiff's age.

7. Defendant/Counter-Claimant admits the allegation in Paragraph 7.

8. Defendant/Counter-Claimant generally admits the allegations in Paragraph 8.

9. Defendant/Counter-Claimant admits that he and the Plaintiff created explicit photographs and videos together during the course of their relationship. These explicit photographs and videos were all consensual and a joint production by Plaintiff and Defendant/Counter-Claimant.

10. The allegations in Paragraph 10 are denied.

11. The allegations in Paragraph 11 are denied.

12. The allegation in Paragraph 12 is denied. Defendant/Counter-Claimant never gave the Plaintiff his passcode nor permission to access his phone without his knowledge and consent. Plaintiff was never allowed access to Defendant/Counter-Claimant's phone, and the claim that she was granted such access is patently false.

13. The allegation in Paragraph 13 is denied for lack of sufficient information to justify a belief therein, except to admit that the Defendant/Counter-Claimant learned on July 30, 2025, that the Plaintiff had unlawfully taken and accessed his phone during the early morning hours while he was sleeping in an apartment in Tampa, Florida. On that date, the Plaintiff admitted to the Defendant/Counter-Claimant that she had taken and accessed his phone without his

permission, and that she left the apartment and turned off the phone's location services so she could not be located while she searched through the phone. The Defendant/Counter-Claimant is unaware of exactly what all materials the Plaintiff unlawfully viewed on his phone, and so this allegation regarding what she "discovered" is denied for lack of sufficient information to justify a belief therein.

14. For the reasons stated in response to Paragraph 13, the allegation in Paragraph 14 is denied as written and for lack of sufficient information to justify a belief therein.

15. For the reasons stated in response to Paragraph 13, the allegation in Paragraph 15 is denied as written and for lack of sufficient information to justify a belief therein.

16. For the reasons stated in response to Paragraph 13, the allegation in Paragraph 16 is denied as written and for lack of sufficient information to justify a belief therein.

17. For the reasons stated in response to Paragraph 13, the allegations in Paragraph 17 are denied as written and for lack of sufficient information to justify a belief therein. Further answering, Defendant/Counter-Claimant denies that any videos or pictures of the Plaintiff on his phone were taken or created without her consent. The plaintiff never objected to any photos or videos taken of her at anytime.

18. The Defendant/Counter-Claimant admits that the most videos of the Plaintiff on his phone were taken in New Orleans, Louisiana, but denies that any of them were created without the Plaintiff's consent. For the reasons stated in response to Paragraph 13, the other allegations in Paragraph 18 are denied as written and for lack of sufficient information to justify a belief therein.

19. Defendant/Counter-Claimant denies and denies for lack of sufficient information to justify a belief therein the allegations in Paragraph 19.

20.     The allegations in Paragraph 20 are denied as written and denied for lack of sufficient information to justify a belief therein, as Defendant/Counter-Claimant is unaware of exactly what "communications" this Paragraph refers to.

21.     The allegations in Paragraph 21 are denied as written and denied for lack of sufficient information to justify a belief therein, as Defendant/Counter-Claimant is unaware of exactly what "discussions" this Paragraph refers to.

22.     In response to Paragraph 22, the Defendant/Counter-Claimant admits that the Plaintiff told him she had unlawfully broken into his phone during the early morning hours of July 30, 2025, and viewed and unlawfully transmitted to her phone various private images both of the Plaintiff and Defendant/Counter-Claimant together, and other private sexual images of the Defendant/Counter-Claimant alone or with people other than the Plaintiff. The Plaintiff further stated that she had transmitted the images and videos she had taken from the Defendant/Counter-Claimant's phone to other unidentified "third parties."

23.     Defendant/Counter-Claimant denies as written the allegations in Paragraph 23, as it is unclear when this Paragraph is asserting that this alleged admission occurred. Further responding, the Defendant/Counter-Claimant states that the Plaintiff produced a firearm during one conversation regarding the July 30th incident and, any statements the Defendant/Counter-Claimant made during that conversation were made under duress because he was threatened by the Plaintiff's possession and brandishing of a firearm during their discussion.

<b><u>Causes of Action</u></b>

<b>Cause 1: Violence Against Women Reauthorization Act, 15 U.S.C. § 6851</b>

24.     No response is required to the statement in Paragraph 24 of the Complaint.

25.     For the reasons stated in response to Paragraphs 1 to 23, the allegation in Paragraph 25 is denied and/or denied as written and/or denied for lack of sufficient information to form a belief therein.

26.     Defendant/Counter-Claimant denies as written the allegations contained in Paragraph 26 of the Complaint, as the Plaintiff consented to the creation of all images and videos that were on Defendant/Counter-Claimant's phone involving her.  The remaining allegations in this Paragraph are citations to law which do not require a response.

27.     Paragraph 27 of the Complaint contains a statement of law to which no response is required.

28.     Paragraph 28 of the Complaint contains a statement of law to which no response is required.  However, out of an abundance of caution, the Defendant/Counter-Claimant denies that Plaintiff is entitled to liquidated damages under 15 U.S.C. § 6851.

29.     Paragraph 29 of the Complaint does not contain an allegation to which a response is required.  However, out of an abundance of caution, the Defendant/Counter-Claimant denies that the Plaintiff is entitled to monetary damages.

30.     Paragraph 30 of the Complaint contains a statement of law to which no response is required.

31.     Paragraph 31 of the Complaint does not contain an allegation to which a response is required.  However, out of an abundance of caution, the Defendant/Counter-Claimant denies that the Plaintiff is entitled to injunctive relief under VAWRA.

### Cause 2: Intentional Infliction of Emotional Distress (IIED)

32.     No response is required to the statement in Paragraph 32 of the Complaint.

33.     Paragraph 33 of the Complaint contains a statement of law to which no response is required.  However, out of an abundance of caution, the Defendant/Counter-Claimant denies that Plaintiff is entitled to damages for intentional infliction of emotional distress under Louisiana law.

34.     The allegation in Paragraph 34 is denied.

35.     The allegation in Paragraph 35 is denied.

36.     Paragraph 36 of the Complaint does not contain an allegation to which a response is required.  However, out of an abundance of caution, the Defendant/Counter-Claimant denies that the Plaintiff is entitled to relief under Louisiana law.

## Jury Demand

37.     No response is required to the jury demand in Paragraph 37 of the Complaint.

38.     No response is required to Paragraph 38. However, out of an abundance of caution, the Defendant/Counter-Claimant denies that the Plaintiff is entitled to relief under Louisiana law.

## DEFENDANT/COUNTER-CLAIMANT'S AFFIRMATIVE DEFENSES

Discovery and investigation may reveal one or more of the following defenses available to Defendant/Counter-Claimant in this matter.  Defendant/Counter-Claimant accordingly asserts the following defenses.  Upon completion of discovery, if the facts warrant, Defendant/Counter-Claimant may withdraw any of these defenses as may be appropriate. Defendant/Counter-Claimant further reserves the right to amend this Answer to assert additional defenses and other claims as discovery progresses and additional information becomes known and available. Further answering and by way of additional defense, Defendant/Counter-Claimant states as follows:

1.  The Plaintiff's Complaint fails to state a cause of action upon which relief may be granted.

2.  Plaintiff's claims are subject to set off.

3.  Plaintiff's claims for punitive damages are not permitted by Louisiana law.

4.  Plaintiff's claims are barred by the doctrine of estoppel.

5.  Plaintiff's claims are barred by the doctrine of assumption of risk and/or consent.

5.  Plaintiff's claims are barred by the doctrine of unclean hands.

6.  Plaintiff's claims are barred because they resulted from her own unlawful acts.

For the reasons stated in this Answer, Defendant John Roe prays the Court to enter judgment in his favor and against Plaintiff. Defendant further prays the Court for an award of attorney's fees and costs and for all other and further relief that the Court deems appropriate.

## II.    COUNTERCLAIMS

Defendant/Counter-Claimant John Roe alleges as follows in support of his counterclaims against the Plaintiff, Jane Doe:

1. Defendant/Counter-Claimant is an adult citizen and resident of Miami, Florida.

2. Plaintiff/Counter-Defendant Jane Doe is an adult citizen and resident of New Orleans, Louisiana.

3. Jurisdiction is founded on 28 U.S.C. § 1331 as one of Defendant/Counter-Claimant's causes of action is based on federal law. Additionally, jurisdiction is proper under 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000. Plaintiff also invokes supplemental jurisdiction over claims under state law pursuant to 28 U.S.C. §1367.

4. Venue is proper in this district because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## Factual Allegations

5. The Defendant/Counter-Claimant first met the Plaintiff/Counter-Defendant in New Orleans around Mardi Gras 2025, while they were both attending law school. They soon initiated a romantic and eventually a sexual relationship.

6. During their relationship, Defendant/Counter-Claimant and the Plaintiff/Counter-Defendant created videos and images of themselves engaged in intimate sexual activities. Some of the videos and images were created on the Defendant/Counter-Claimant's phone, while others were taken on Plaintiff/Counter-Defendant's phone.

7. Plaintiff/Counter-Defendant Jane Doe was aware of and consented to the creation of all these intimate visual depictions. She often expressed that she enjoyed creating these images and videos and never expressed any objections to their creation.

8. Also stored on Defendant/Counter-Claimant's phone were intimate sexual images and videos of the Defendant/Counter-Claimant engaging in sexual acts either alone or with people other than the Plaintiff/Counter-Defendant.

9. Although they had been dating just a few short months, the Plaintiff/Counter-Defendant did bond quickly and fell in love. They discussed marriage and having children. They discussed the idea of pre-nuptial agreement, to which Plaintiff/Counter-Defendant was strongly opposed. Although Defendant/Counter-Claimant did fall in love with and genuinely cared for the Plaintiff/Counter-Defendant, he made it clear that his primary focus at the time was finishing law school, passing the Florida Bar, and starting his career as a lawyer in Miami.

10. During their relationship, the Plaintiff/Counter-Defendant disclosed to Defendant/Counter-Claimant that she had previously accessed a prior boyfriend's phone without the boyfriend's consent while he was sleeping, and she had broken up with that boyfriend because the contents on his phone suggested to her that he was gay.

11. At no point during their relationship did the Defendant/Counter-Claimant give the Plaintiff/Counter-Defendant permission to access his phone without his knowledge and consent.

12. After his graduation from law school, the Defendant/Counter-Claimant started to study for the Florida bar examination. Given the amount of time necessary to prepare for the examination, he could not spend as much time with the Plaintiff/Counter-Claimant as she wanted and she reacted negatively to the fact that they were spending less time together. She made it clear that she began to suspect he was having a relationship with someone else, which was not true. Furthermore, the Plaintiff/Counter-Defendant knew that the Defendant/Counter-Claimant intended to move to Florida after the bar examination.

13. On July 30, 2025, the Defendant/Counter-Claimant was staying at a rented apartment in Tampa, Florida, to take the Florida bar examination. Defendant/Counter-Claimant was under tremendous pressure to pass the test, as his financial future and ability to work as a lawyer depended on it.

14. The Plaintiff/Counter-Defendant had traveled to Tampa, Florida to stay with him several days while he took the bar. Defendant/Counter-Claimant had requested her to be there for emotional support.

15. Sometime during the early morning hours of July 30, 2025, while Defendant/Counter-Claimant was asleep, the Plaintiff/Counter-Defendant took his phone

without his consent and unlawfully accessed the device. She then left the apartment with the phone and turned off the locations services that would have shown where it was.

16. While she had the phone, the Plaintiff/Counter-Defendant unlawfully accessed it and later told Defendant/Counter-Claimant that she viewed the sexually explicit images and videos of the Defendant/Counter-Claimant with both the Plaintiff/Counter-Defendant and with other third-party females as well. The Plaintiff/Counter-Defendant also unlawfully accessed and viewed videos and images of the Defendant/Counter-Claimant engaging in intimate sexual acts by himself.

17. The Plaintiff/Counter-Defendant also downloaded to the phone an application that the Defendant/Counter-Claimant had previously deleted. To do this, the Plaintiff/Counter-Defendant impersonated the Defendant/Counter-Claimant by using his online credentials to download the application.

18. Once the application was illegally re-installed on the phone, the Plaintiff/Counter-Defendant claims to have accessed and viewed private text conversations between Defendant/Counter-Claimant and others.

19. Plaintiff/Counter-Defendant stated that she then transferred to her phone the sexually explicit images and videos of the Defendant/Counter-Claimant engaging in intimate sexual activities while he was alone. She also transferred to her phone sexually explicit images and videos of the Defendant/Counter-Claimant with women other than the Plaintiff/Counter-Defendant.

20. On information and belief, the Defendant/Counter-Claimant's face and other identifying features were depicted in at least some of these videos and images that Plaintiff/Counter-Defendant transferred. Upon further information and belief, she also

identified Defendant/Counter-Claimant to third parties to whom she stated she transferred the intimate images involving Defendant/Counter-Claimant.

21. On further information and belief, and as confirmed by her later statements, after she transferred these intimate visual depictions to her phone, the Plaintiff/Counter-Defendant then transferred the images and videos in which she was neither involved nor depicted from her phone to other unnamed third parties. The Plaintiff/Counter-Defendant used the internet or other facility of interstate commerce to transfer the material.

22. Furthermore, the Plaintiff/Counter-Defendant specifically took screen shots of and downloaded materials that would disclose and confirm Defendant/Counter-Claimant's identity, including among others things his Instagram account, his formal headshots, and other information.

23. When she returned to the apartment, the Plaintiff/Counter-Defendant woke the Defendant/Counter-Claimant up and told him what she had done, specifically, that she had accessed his phone without his permission and transmitted to her phone sexually explicit images and videos of the Defendant/Counter-Claimant with her, by himself, and with other females. She stated she would destroy his career.

24. The Plaintiff/Counter-Defendant also told the Defendant/Counter-Claimant that she had transmitted these sexually explicit materials to unidentified "third parties," and that she was going to ruin his life and career with the materials.

25. The next day, the Plaintiff/Counter-Defendant and the Defendant/Counter-Claimant returned to New Orleans, Louisiana, via separate flights.

26. On or about July 31, 2025, the Defendant/Counter-Claimant met the Plaintiff/Counter-Defendant at her apartment to discuss what had happened. During this

conversation, the Plaintiff/Counter-Defendant produced a firearm pistol from her pocket and brandished it at the Defendant/Counter-Claimant. These acts by Plaintiff/Counter-Defendant reasonably placed the Defendant/Counter-Claimant in fear for his life and/or the possibility of great bodily harm. At her request, the Plaintiff/Counter-Defendant and Defendant/Counter Plaintiff engaged in sex during that meeting and continued their relationship until he left permanently for Florida.

## Counterclaim 1:
## Violence Against Women Reauthorization Act, 15 U.S.C. § 6851

27. The Defendant/Counter-Claimant restates and re-alleges Paragraphs 1 to 24.

28. As alleged above, the Plaintiff/Counter-Defendant caused intimate visual depictions of the Defendant/Counter-Claimant to be disclosed via a facility of interstate commerce, namely a telecommunications device and/or the internet, without his consent. The intimate visual depictions that the Plaintiff/Counter-Defendant disclosed included videos and images of the Defendant/Counter-Claimant either by himself or participating in sexual acts with third-party females, and they depicted his face and/or other identifying features.

29. The Violence Against Women Reauthorization Act ("VAWRA") provides a civil right of action for an "individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure." 15 U.S.C. § 6851(b)(1)(A).

30. VAWRA defines the term to "disclose" to include any transfer of the intimate visual depiction. 15 U.S.C. § 6851(a)(4). The Plaintiff/Counter-Defendant disclosed the

intimate visual depictions of the Defendant/Counter-Claimant both when she transferred them to her phone and when she transferred them to unidentified third parties.

31. VAWRA entitles a victim like Defendant/Counter-Claimant to recover the actual damages sustained by the individual or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation related costs reasonably incurred. 15 U.S.C. § 6851(b)(3)(A)(i).

32. Defendant/Counter-Claimant seeks all available monetary relief.

33. VAWRA also entitles a victim like Defendant/Counter-Claimant to obtain "equitable relief, including a temporary restraining order, a preliminary injunction, or a permanent injunction ordering the defendant to cease display or disclosure of the visual depiction." 15 U.S.C. § 6851(b)(3)(A)(ii). Defendant/Counter-Claimant is also entitled to seek injunctive relief to maintain his confidentiality. 15 U.S.C. § 6851(b)(3)(B).

34. Defendant/Counter-Claimant seeks all appropriate injunctive relief available under VAWRA.

## Counterclaim 2:
## Intentional Infliction of Emotional Distress

35. The Defendant/Counter-Claimant restates and re-alleges Paragraphs 1 to 24.

36. The Plaintiff/Counter-Defendant Jane Doe engaged in extreme and outrageous conduct when she unlawfully accessed the Defendant/Counter-Claimant's phone on the morning of July 30, 2025, and transferred intimate visual depictions in which she was not involved to her phone and/or to third parties. Although she knew the Defendant/Counter-Claimant was under tremendous pressure because of the bar examination, she then threatened to ruin the Defendant/Counter-Claimant's life and career using the materials she

unlawfully accessed and transferred. These acts constitute the tort of intentional infliction of emotional distress under Louisiana law.

### Counterclaim 3:
### Assault

37. On or about July 31, 2025, after they had returned from Florida, the Plaintiff/Counter-Defendant produced a firearm from her pocket while she was talking with the Defendant/Counter-Defendant at her apartment, and she brandished the weapon at the Defendant/Counter-Claimant. These actions reasonably placed the Defendant/Counter-Claimant in fear for his life and constitute the tort of assault under Louisiana law.

### PRAYER FOR RELIEF

38. **WHEREFORE**, the Defendant/Counter-Claimant prays that the Court exercise its supplemental jurisdiction over the state law claims, and after due proceedings are had, that there be a judgment in his favor and against Plaintiff/Counter-Defendant, holding her liable for compensatory and punitive damages, together with judicial interest, all attorneys' fees and costs of these proceedings, and all further legal, equitable, and/or general relief available.

Respectfully submitted,

/s/ M. Richard Schroeder
M. Richard Schroeder, La. Bar# 19145
NOLA Schroeder Law LLC
1040 St. Ferdinand St.
New Orleans, La. 70117
(504) 291-6990
mrschroeder@nolaschroederlaw.com

-AND-

/s/ Stephen J. Haedicke
The Law Office of Stephen J. Haedicke
1040 Saint Ferdinand Street
New Orleans, LA 70117
Telephone: 504.291.6990
Stephen@haedickelaw.com

### CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties.

/s/ Stephen Haedicke